Ms. Cameron Kerr. Mr. Magg. Welcome. Good morning. Good morning, Your Honor. My name is Thomas Magg, and I represent Cameron Kerr. This is a brief state query, a trial battery case. The first argument I'd like to address is the misinstruction by the trial court of the jury. And that is based primarily on our Supreme Court's case some 15, 16 years ago now in People v. Pollock, cited in the brief, of course, which rejected a nearly identical jury instruction as to the one given here. The only real difference between what the Supreme Court rejected in Pollock and what was given here is a matter of punctuation. The bottom line of People v. Pollock is that there is no duty to act without knowledge of the need to act. The defendant in this case was charged with knowingly causing trauma to a child of a minor O.W. The indictment uses the word knowingly. The jury instructions says no to should have known. The thing about should have known is it's the opposite of knows. It means you didn't know for whatever reason. Maybe you should have, but you didn't. Well, by definition, you didn't know, and the jury was instructed to convict you if you didn't know. That's not a knowingly instruction. It is acknowledged that the I.P.I. contained a similar instruction, but as the Supreme Court itself has noted, the I.P.I.s are not and the I.P.I. is inconsistent with People v. Pollock decided a decade and a half ago. As noted in Pollock, STANCIAL, which is the decision prior to the Supreme Court decision that gave rise to the instruction in Pollock, STANCIAL instead stands for the proposition that when proof that a parent aided or abetted an offense is to be deduced from an omission to act, the parent must know of a serious and imminent threat to the welfare of the child. Mr. Magg, let's assume that you're correct on the jury instruction. Yes, Your Honor. If you're correct on the jury instruction, a new trial may not be warranted if there's sufficient evidence of guilt beyond a reasonable doubt as a principle. People v. Pollock addresses that exact question. Right. And it states, if conflicting instructions are being, if conflicting instructions, one being a correct statement of the law and the other being an incorrect statement of the law, the error cannot be deemed harmless. That is our Supreme Court in People v. Pollock. Let's assume for the sake of argument that the jury was correctly instructed as to principle liability, but misinstructed, as I allege, as to the aiding and abetting allegation that you should have known. The jury was instructed that it couldn't convicted my client literally if he wasn't there at the time that the offense took place and he should have known what was going on. That allows the jury to convict my client for doing nothing wrong. The fact that a proper jury instruction is given as to one element of the law does not erase the prejudice of the telling the jury they can convict for something that's not illegal as set forth in People v. Pollock. So the bottom line is a proper instruction does not negate an improper instruction in this circumstance. Well, the state cites two cases which seem to disagree with your position. I understand that. The Illinois Supreme Court in People v. Pollock has adopted my exact position and they are the highest court in this land on Illinois law and that is what the Illinois Supreme Court says the law is. Well, the distinction fundamentally with what the state is citing to is let's assume that the court issued a proper aiding and abetting instruction, accountability instruction, but there was no evidence of accountability. Thus, the court shouldn't have entered an accountability instruction in the first place. That would be harmless error, but that's not the fact scenario here. They took the effort of primarily arguing the accountability instruction to the jury. I won't say exclusively, but primarily. And that was the theory of the case because there actually is no evidence in the trial from any witness that they could testify that my client actually harmed the child. Even the mother of the child who was being called as a cooperating witness for the state and who ultimately pled guilty to abusing the child testified she never saw Mr. Kerr do anything that she thought was intended to injure the child. This is a witness called by the state who has a very strong incentive to point the finger at Mr. Kerr because it potentially exculpates her. And she couldn't do that or wouldn't do that. So the bottom line is, is People v. Pollock at a minimum requires this court to reverse and remand this case back for a new trial. Coupled in with People v. Pollock is another argument, and that has to do with parentage. Well, he signed the birth certificate. There is nothing in the record. There is no voluntary acknowledgment of paternity. And I would suggest perhaps asking the state when they come up here if they can cite in the record exactly where the voluntary acknowledgment of paternity is. You don't dispute that he signed the birth certificate? There is testimony that he signed a birth certificate in Missouri. Illinois law does not govern the legal effect of that. So that was not disputed? The fact that he signed the birth certificate in Missouri? The child was born in Missouri. The record indicates it is a Missouri birth certificate. There was testimony that he did sign, or at least his name was on the birth certificate. The trial court said that there was a voluntary acknowledgment of paternity. But there's nothing in the record. There's no evidence. There's no copy of the V.A.P. voluntary acknowledgment of paternity. There's nothing. It's a phantom. It's a finding of the trial court based on nothing. Now, it was the position of the state's attorney at trial, but they never produced it in discovery, never sought to introduce it in evidence, never introduced it in evidence. You're not talking about the birth certificate? I'm talking about the V.A.P. You're talking about the V.A.P., okay. Right. And you think it's required? If they're going to say that he voluntarily acknowledged paternity such that he is a legal father, I think they are required to show that he has signed the voluntary acknowledgment of paternity either in Illinois, in Missouri, or somewhere. As this is a Missouri birth certificate, Missouri law governs the legal effect of the birth certificate. And as the Missouri Supreme Court has noted and cited in the brief, a Missouri birth certificate is not evidence of the identity of the father. Furthermore, it is undisputed my client's not the biological father. It is undisputed my client never adopted the child. It is undisputed there was no court order giving him custody of the minor O.P. The most that you could say about my client is that he was a paramour of the child's mother. He dated the child's mother. Sometimes they lived together, sometimes they didn't. But he was indisputably not the biological father. Counsel, does Missouri law require for a father or claimed father to be listed on the certificate? Does it require a voluntary acknowledgment of paternity to be signed? It is unclear to me that it was or is. Missouri law is somewhat different. It is not a subject that the trial court allowed discussion of. I appear to be out of time. Thank you. I have a question about that. Are you saying the court would not allow that evidence in? When the court made its decision as to the legal effect of the birth certificate, she expressly relied on the Illinois Public Records Act and another Illinois statute. I attempted to raise with the court the fact this was a Missouri birth certificate and the court just cut me off and said they weren't going to consider it, and I have cited that in my brief. I'll conclude with the point in the record where that happens. Okay. Thank you. Thank you. Okay. Ms. Miller. May it please the court, your honors, counsel, my name is Rachel Miller, and I represent the people of the state of Illinois. As counsel said, the defendant was convicted of four counts of aggravated battery to a child for multiple rib fractures, fractures to the right posterior side, and a skull fracture and a leg fracture. The leg fracture conviction was ultimately vacated. Opposing counsel discussed issue one on the instruction of accountability, and I would like to first address that. I know that you have a certain order you'd like to go into, but could we begin, if you don't mind, with this apparent issue? Okay. Because one element of the offense here is it's got to be apparent, right? Yes. Well, there's no dispute that he is not the biological father, as opposing counsel said, and we are not arguing that he is the adoptive father. There was no such adoption. So the question becomes how did the state prove parentage? Well, the birth certificate was entered into evidence, which his name was on it. It was entered into evidence for another issue on the amending of the indictment to change the date of birth. Was that entered at trial, though, or before the trial began? Right before the trial began. So that they could amend the indictment. Yes. But it wasn't entered as a matter of record at trial. Okay. No, it was not then. I'm sorry. No, don't be sorry. I just want to clarify the record. So there was no evidence during the trial that he had signed this birth certificate? There was no evidence besides the mother, Ms. Weathington, testifying that his name was on the birth certificate and he signed it at the hospital. And I have not found the voluntary acknowledgment of paternity, but the judge in her order did say that a voluntary ñ she noted that a voluntary acknowledgment of paternity was signed, but I was unable to find anything, so I'm unsure where that came from. But she did say it in her order. And that was actually on C-262, where she said that a voluntary acknowledgment of paternity had been signed and that she noted that the birth certificate had his name listed as the father on it, making him the legal father. She went into extensive review about ñ she actually went into extensive review that ñ Justice Overstreet, you asked about the Missouri requiring a voluntary acknowledgment of paternity to be signed. I believe that I had found something. I didn't bring it with me, so if more research is needed, I'd be happy to do so. That in order to sign the birth certificate in Missouri, if you are not married, you have to sign a voluntary acknowledgment of paternity beforehand. I'm not 100 percent certain, and I can do more research if you would like. But this is really not the time for the state or fellow prosecutor to do that. No. Right? Right. I mean, you would agree that if it was going to be done, it should have been done by the state at trial. Right. Yes, correct. So you acknowledge that you could not find in the record any evidence to support the judge's finding about the voluntary acknowledgment of paternity. No, I could not. And there's nothing in the record where the court takes notice of Missouri law for a finding here, right? No, I did not come across that. Okay. I interrupted you. Go ahead and proceed as you wanted to proceed. Yes. I'm sorry. No. Sorry. I was just going to say for Issue 1 that the circuit court did not err in giving the instruction on accountability because whether there was a misinstruction, there was sufficient evidence to find the defendant guilty beyond a reasonable doubt, which is ultimately for the trier of fact to decide whether there was sufficient evidence. There was evidence from Dr. Coots and the informant, Mr. Miller, that kind of corroborated each other's story. Dr. Coots testified that a lot of the skull was likely fractured from coming into contact with the flat surface or being thrown against the flat surface. And the general office informant, Mr. Miller, testified that the defendant told him that he was holding the OW and got into an argument with Ms. Webbington, and he threw him against the bed where he hit his head. So there's sufficient evidence there to determine that the cause was likely being thrown against the bed and hitting his head. And there was testimony that, and from defendant to it, he would tightly squeeze OW, which Dr. Coots testified that this can cause rib fractures with the amount of force that can be used to squeeze an infant that is only seven weeks old. Furthermore... Do you believe then the defendant made certain admissions that would have been sufficient to convict him? Pardon me, can you repeat that, please, Justice? Did the defendant make certain admissions that were sufficient to cause him to be convicted, such as holding the child too tight? I believe so, yes, he did. I mean, that's one example, right? Do you have other examples where the evidence was sufficient to convict him of these offenses? I believe that him admitting to throwing the child against the bed and the child hitting his head and resulting in a skull fracture would be evidence that it was likely the cause of the skull fracture. And there's testimony from other individuals that he was overbearing or aggressive with the child. He would flop him around and wouldn't support his head, which would indicate to a rational trial the fact that this could be an instance where he did cause these injuries because they weighed the credibility of the evidence and the witnesses. We've been asked to take judicial notice of the fact that the mother after the trial pled guilty to the exact same injuries for which this defendant is appealing. What's the state's position on that? Do you think we can do that? I don't believe that you can do that. And even if we did, do you think it matters in this case? Do you think it's relevant? No, I do not think it matters. I don't think it is relevant because, first and foremost, she signed it after he was convicted and sentenced. Second, there was multiple injuries, and the doctors testified that this happened over the course of the child's seven weeks of life. Over half of his ribs were broken, some of them broken multiple times. He had a skull fracture, a potential leg fracture, liver, something wrong with his liver. And so it wasn't just one instance. They can both be convicted on the same thing because there were multiple injuries that happened over the seven-week span of this child's life. So, no, we do not believe that it would be relevant. Any other questions? What I was going to say with regards to the first issue is that Judge Knapp, counsel talked about Pollack, Judge Knapp and her order extensively spent a significant amount of time and consideration on deciding this instruction for accountability. Where she distinguished this case from Pollack, where the defendant in Pollack was convicted solely on the theory of accountability and not based on any abuse perpetrated by the defendant. And in this case argued that he was injured due to repeated intentional abuse of trauma inflicted by the defendant. He was the perpetrator. He was not being charged with accountability solely. So why give an accountability instruction? I believe that the state wanted to show that there was significant evidence that even if he, even if the jury didn't find that he did it as the principal, he was still accountable for the actions because he knew what was going on and he was around that child every day except for maybe three or four days. And I think it then links back to whether or not he is the legal parent and has a stronger duty to intervene. Is that definition of knowing or should have known, as I recall, that's almost a reckless definition, isn't it, instead of knowingly? Yes. I believe so, yes. I believe you're right, Your Honor. Does that exist in the criminal law? I don't know that it does, but I was just thinking about the definition. And that's a very good question, Justice Case. I've heard that before being compared to that, so, but. Knew or should have known is more of a foreseeability issue that we see in the civil law under negligence all the time. Not necessarily reckless. Right. Not necessarily reckless, it can just be negligent. Foreseeability. But, I mean, here we're in the criminal setting, and it seems like the state wanted to make sure they wrapped this up in a bow, no matter what the evidence was. And anyway, you have some additional time if you'd like to finish. If there's no further questions. Okay. Thank you very much. Mr. Mang, do you have some comments in rebuttal? Unless the Court has any questions that I'm happy to answer, I think the Court understands the legal issues and has had the record represented to them apparently factually, so. Okay. Thank you. Thank you, Your Honor. We always appreciate that, Mr. Mang. Do you want to take a break? It's up to you. That's right. Do you want to take a break? Sure. Take a break. Okay. The Court will be in recess temporarily.